**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DAVID WILBANKS, #02086969 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  4:19cv921 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

*Pro Se* Petitioner David Wilbanks, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The petition was referred to United States Magistrate Judge Christine A. Nowak for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I.  PROCEDURAL BACKGROUND

Petitioner is challenging his Denton County convictions. A jury found Petitioner guilty of continuous sexual abuse of a child (Count II) and sexual assault (Count III),[1] and the trial court sentenced him to fifty years' confinement for Count II and twenty years' confinement for Count III, to run consecutively, Cause No. F16-1258-16. (Dkt. #13-15, pp. 58-59).

Petitioner appealed his conviction, which was affirmed on January 18, 2018. *Wilbanks v. State*, No. 02-16-00305-CR, 2018 WL 472907 (Tex. App. Jan. 18, 2018) (Dkt. #13-3). Petitioner filed a petition for discretionary review ("PDR") (Dkt. #13-11), which the Texas Court of Criminal Appeals ("TCCA") refused on May 9, 2018 (Dkt. #13-12).

---

[1] The jury found Petitioner not guilty of indecency with a child. (Dkt. #13-15, p. 60).

Petitioner filed an application for state habeas corpus relief on March 28, 2019.[2] (Dkt. #13-25, pp. 4-23). The state habeas court adopted the State's Proposed Findings of Fact and Conclusions of Law (Dkt. #13-28, pp. 53-67) as its own and recommended that Petitioner's grounds for relief be denied. (Dkt. #13-28, p. 68). On September 18, 2019, the TCCA denied the application without a written order on the findings of the trial court without a hearing. (Dkt. #13-22).

Petitioner timely filed the instant petition on or about December 11, 2019.[3] (Dkt. #1). Petitioner asserts the following claims for relief:

1. Trial counsel rendered ineffective assistance by failing to investigate and raise the following issues:

    (a) that B.W.[4] (the victim), her friend, and the two children's mothers formed a "criminal conspiracy" against him;

    (b) that the forensic interviewer had exculpatory evidence that she could have testified to regarding allegations of sexual incidents made by B.W. against other perpetrators and that the Confrontation Clause required admission of the evidence; and

    (c) that the trial court constructively amended the indictment by including a larger offense date range in the court's charge than the indictment.

2. The trial judge was biased.

---

[2] The application is dated March 28, 2019. (Dkt. #13-25, p. 20). For purposes of this Report and Recommendation, the Court assumes that he mailed the application on that date, and the application is deemed filed on March 28, 2019, in accordance with the state "mailbox rule." *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013); *Scott v. Dir., TDCJ-CID*, No. 4:17CV779, 2019 WL 2273756, at *1 (E.D. Tex. Mar. 4, 2019), *report and recommendation adopted*, No. 4:17CV779, 2019 WL 2267166 (E.D. Tex. May 27, 2019).

[3] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on December 11, 2019. (Dkt. # 1, p. 12).

[4] The Texas state courts refer to the victim by various names, including Gloria, B.W., and the victim. These various names refer to the same person, and the Court will use B.W. throughout this Report and Recommendation.

3.      The trial court erred by constructively amending the indictment by including a larger offense date range in the court's charge than was in the indictment.

4.      Texas defendants are victims of Texas's criminal laws regarding sexual assault against children because the laws guarantee convictions and do not allow defendants to defend themselves by allowing charges to be brought many years after the offense in violation of due process rights.

5.      Petitioner is actually innocent of the offenses.

(Dkt. #1, pp. 7-9; Dkt. #1-1). The Director filed a response, arguing that the claims are either without merit, procedurally barred, or not cognizable on federal habeas review. (Dkt. #12). Petitioner filed a reply.[5] (Dkt. #16). In his reply, Petitioner withdraws his actual innocence claim (Claim 5) (Dkt. #16, pp. 4-5); thus, the Court will not address that claim.

## II.  FACTUAL BACKGROUND

The Second District Court of Appeals set out the facts as follows:

When she was fourteen years old, [B.W.]—who had lived with Wilbanks from time to time while he financially and emotionally supported her family—told her best friend's mother that Wilbanks had repeatedly performed sexual acts with her, beginning with fondling when she was six years old and continuing until the time of her outcry. At the urging of her friend's mother, [B.W.] told her own mother, who contacted the police.

As part of an investigation by both the police and Child Protective Services, Lori Nelson conducted a forensic interview of [B.W.]. During the interview, [B.W.] provided details about what Wilbanks had done to her. [B.W.] told Nelson that Wilbanks began digitally penetrating her when she was six and that he began having intercourse with her when she was about eight or nine, which continued until she was fourteen.

Ultimately, a grand jury issued a three-count indictment charging Wilbanks with (1) indecency with a child by engaging in sexual contact with [B.W.] when she was younger than seventeen (Count One); (2) continuous sexual abuse of [B.W.] before she turned fourteen (Count Two); and (3) sexually assaulting [B.W.] when she was

---

[5] In his Reply, Petitioner complains that the Court gave him an inadequate extension of time (thirty days) in which to file his Reply and that "any shortcomings" in his Reply "lie entirely in the fault of the Court by denying him adequate time within which to generate an adequate Response to Respondent's Answer." (Dkt. #16, p. 2). If Petitioner needed additional time to draft his Reply, he could have requested another extension from the Court. Petitioner did not do so.

younger than seventeen (Count Three). *See* Tex. Penal Code Ann. §§ 21.02, 21.11(a)(2), 22.011(a)(2)(C) (West Supp. 2017). After a trial, a jury found Wilbanks not guilty of Count One but guilty of Counts Two and Three and assessed his punishment at fifty years' confinement for Count Two and at twenty years' confinement for Count Three. The trial court sentenced Wilbanks in accordance with the jury's assessment and ordered the sentences to run consecutively.

*Wilbanks*, No. 02-16-00305-CR, 2018 WL 472907, at *1 (Dkt. #13-3, pp. 2-3) (footnote omitted).

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002); *Renico v. Lett*, 559 U.S. 766, 773 (2010). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)). Where, as here, "the state habeas court and trial court are one in the same," the presumption of correctness afforded the state habeas court's factual determinations is "especially strong." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal

5

habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court recently explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

6

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

### A.    <u>Ineffective Assistance of Counsel (Claim 1)</u>

Petitioner asserts several claims of ineffective assistance of counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

Reviewing Petitioner's ineffective-assistance-of-counsel claim through the lens of AEDPA, however, means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to investigate and raise the following issues: (a) that B.W., her friend, and the two children's mothers formed a

8

"criminal conspiracy" against him; (b) that the forensic interviewer had exculpatory evidence that she could have testified to regarding allegations of sexual incidents made by B.W. against other perpetrators and that the Confrontation Clause required admission of the evidence; and (c) that the trial court constructively amended the indictment by including a larger offense date range in the court's charge than the indictment. (Dkt. #1, p. 7; Dkt. #1-1, pp. 6-11).

Trial counsel has a duty to conduct a reasonable amount of pretrial investigation into the facts of a criminal case or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. To establish that counsel was ineffective for a failure to investigate, the petitioner must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). Additionally, it is clear in the Fifth Circuit that "counsel is not required to make futile motions or objections." *See Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

1. **Failure to Investigate and Raise the Issue of a "Criminal Conspiracy" (Claim 1(a))**

Petitioner asserts that trial counsel rendered ineffective assistance by failing to investigate and raise the issue that B.W., her friend, and the two children's mothers formed a "criminal conspiracy" against him.

When Petitioner raised this claim in his state application for habeas relief, the state habeas court issued the following findings:

13. Applicant alleges that counsel failed to raise the issue that "C.K. and B.W. conspired to blackmail and extort Applicant."

14. Trial counsel asked Applicant twice about this issue when Applicant testified.

15. Counsel specifically asked Applicant whether C.K. demanded "some kind of payment," and Applicant responded that C.K. "basically used her daughter to manipulate people to get what she needs."

16. Counsel asked Applicant whether he thought it was possible "that [C.K.] didn't think you were giving her enough financial support . . . and that's why this whole kind of ball started rolling?" Applicant responded, "I believe [C.K.] felt like she was going to lose the children. . . . And I felt that they feared they were going to go back home to my brother."

17. Applicant reiterated this defensive theory when he testified on cross-examination, that "this whole thing started because" B.W. did not want to go live with her father—she wanted to stay living in Applicant's apartment.

18. After B.W. outcried and accused Applicant of sexual abuse, he sent numerous text messages to B.W. expressing his love for her.

19. Among other things, Applicant texted B.W.: "stay strong for me," "I love you so much," "I will be by your side on everything you decide to do forever and ever," that he "missed her" heart, and "my love for you will last forever."

20. Applicant testified that C.K. was behind the allegations, yet he said that B.W. made up the allegations because she did not want to go live with her dad.

21. Applicant testified that B.W. cared about him and loved him "very much," yet he depicted her as someone who was willing to falsely accuse him of continuous sexual abuse to get her way.

(Dkt. #13-28, pp. 55-57). The state court issued the following conclusions of law:

4. Since counsel did attempt to raise—through Applicant's testimony—the question of whether C.K. demanded money from Applicant, counsel was not deficient for failing to raise the issue as Applicant contends. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 674 (1984).

5. Further, Applicant has failed to prove prejudice regarding this allegation given that it was raised by counsel, that Applicant did not have much to say about it at trial, and given the nature of some of the other evidence, including apparent inconsistencies in Applicant's defensive theory. *See Strickland*, 466 U.S. at 700.

. . . .

> 11. For each of his allegations of ineffective assistance of counsel, Applicant has failed to prove both deficient performance and prejudice resulting from any alleged deficiency. *See Strickland*, 466 U.S. at 700.

(Dkt. #13-28, pp. 62, 64). These findings and conclusions were adopted by the TCCA when it denied the application on the findings of the trial court, which constitutes and adjudication on the merits.

Petitioner fails to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner's counsel asked questions in an attempt to show that B.W.'s allegations were part of a conspiracy or scheme to blackmail Petitioner and to ensure B.W. would not have to live with her father. Thus, the record demonstrates that trial counsel raised the conspiracy argument. Petitioner fails to show that further investigation of this issue would have revealed any evidence that would have altered the outcome of the trial. *See Anderson*, 18 F.3d at 1221. Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's application of *Strickland* was unreasonable or that its findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on this ineffective assistance of trial counsel claim. Thus, this ineffective assistance claim should be denied.

### 2.    Failure to Argue Forensic Interviewer Had Exculpatory Evidence Regarding B.W.'s Allegations of Sexual Incidents Involving Other Perpetrators and that the Confrontation Clause Required Admission of the Evidence (Claim 1(b))

Next, Petitioner contends that trial counsel rendered ineffective assistance by failing to argue that the forensic interviewer had exculpatory evidence that she could have testified to

regarding allegations of sexual incidents made by B.W. against other perpetrators and that the Confrontation Clause required admission of the evidence. (Dkt. #1-1, pp. 7-8).

During B.W.'s forensic interview, she told the forensic interviewer about instances in which three other individuals had acted sexually toward her throughout the course of her life. *Wilbanks*, No. 02-16-00305-CR, 2018 WL 472907, at *6 (Dkt. #13-3, p. 14). At trial, Petitioner's counsel urged the trial court to allow her to question the forensic examiner in front of the jury about these other instances. *Id.* at *6 (Dkt. #13-3, p. 14). The trial court ruled that the evidence was inadmissible "in front of the jury." *Id.* at *6 (Dkt. #13-3, p. 15). On direct appeal, Petitioner argued that the trial court abused its discretion by not permitting him to question the forensic examiner in front of the jury about instances in which three other individuals had acted sexually toward B.W. because this wrongful limitation of his right to cross-examine witnesses violated his Confrontation Clause and Due Process rights under the United States Constitution, this testimony was permissible under the rule of optional completeness, and the State opened the door to this testimony by eliciting testimony about the reliability of B.W.'s forensic interview. *Id.* at *6 (Dkt. #13-3, p. 14). The Second District Court of Appeals found that Petitioner "did not raise a constitutional complaint to the limitation of the forensic examiner's testimony in the trial court," and thus concluded that Petitioner's "Confrontation Clause and Due Process complaints as to excluded testimony of the forensic interviewer were not preserved for appeal." *Id.* at *6 (Dkt. #13-3, p. 15). Likewise, Second District Court of Appeals found that Petitioner's "counsel did not argue in the trial court that the evidence was admissible under the rule of optional completeness or that the evidence was admissible because the State had opened the door by eliciting testimony about indicia of reliability regarding [B.W.'s] forensic interview," and thus concluded that Petitioner did not preserve these complaints for appellate review. *Id.*

12

In his state habeas application, Petitioner argued that counsel was deficient for failing to argue that "the confrontation clause, the rule of optional completeness, and the 'opened the door' rule required admission of evidence that B.W. told the forensic interviewer" about instances in which three other individuals had acted sexually toward her. (Dkt. #13-28, p. 57, ¶22). The state habeas court made the following findings with respect to this claim:

> 23. During cross-examination of the forensic interviewer, trial counsel argued that B.W.'s admission to the interviewer that three other individuals had inappropriately touched B.W. should be admissible.
>
> 24. Trial counsel did not argue that the evidentiary bases Applicant identifies required the admission of this evidence.
>
> 25. The trial court ruled that the other allegations were not admissible.
>
> 26. Applicant does not provide any evidence that the other accusations were false accusations.
>
> 27. Applicant does not argue that the evidence relating to other accusations went to [B.W.'s] bias, motive, or interest in testifying.
>
> 28. The forensic interviewer's testimony on direct examination was about the incidents in this case.
>
> 29. The interviewer did not testify to a general list of credibility factors.
>
> 30. She discussed "sensory details" and testified that they lend credibility to a child's statement, and she also discussed "peripheral details" and "script memory."
>
> 31. Her discussion of these things was specific to B.W.'s allegations in this case, and she did not testify to a general list of factors to be used in determining credibility.
>
> 32. In the hearing outside the presence of the jury, the interviewer did not testify at any point that multiple allegations of abuse by other people is a factor to be considered in weighing a child's credibility.

(Dkt. #13-28, pp. 57-58). Based on these findings, the state court concluded:

> 6. Counsel was not deficient for failing to argue that the confrontation clause required the admission of any evidence that B.W. had made other allegations about other individuals because trial judges have "'wide latitude' under the Confrontation

13

Clause to impose restrictions on cross-examination based on such criteria as 'harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant,'" and Applicant does not argue that this evidence was relevant to B.W.'s bias, motive, or interest in testifying. *See Johnson v. State*, 490 S.W.3d 895, 910 (Tex. Crim. App. 2016) (quoting *Delaware v. Van Arsdall*, 4 75 U.S. 673, 679 (1986)).

7. Counsel was not deficient for failing to argue that the rule of optional completeness required the admission of evidence that B.W. made other allegations of inappropriate behavior towards her because the forensic interviewer's testimony on direct examination was about the incidents in this case, and the other incidents Appellant wished to inquire into were thus not on the "same subject." Tex. R. Evid. 107.

8. Counsel was not deficient for failing to argue that the State "opened the door" to evidence that B.W. accused other individuals of inappropriate behavior because the forensic interviewer's discussion of various factors that affect the credibility of a statement was specific to B.W.'s allegations in this case, she did not testify to a general list of factors to be used in determining credibility, and she did not testify at any point that multiple allegations of abuse by other people is a factor to be considered in weighing a child's credibility. *See, e.g., Hughes v. State*, 850 S.W.2d 260, 262 (Tex. App.—Fort Worth 1993, pet. ref'd).

. . . .

11. For each of his allegations of ineffective assistance of counsel, Applicant has failed to prove both deficient performance and prejudice resulting from any alleged deficiency. *See Strickland*, 466 U.S. at 700.

(Dkt. #13-28, pp. 62-64). These findings and conclusions were adopted by the TCCA when it denied the application on the findings of the trial court, which constitutes and adjudication on the merits.

Petitioner focuses his federal habeas claim on trial counsel's failure to argue that the Confrontation Clause required admission of the forensic examiner's testimony about B.W.'s allegations of other sexual incidents involving three other individuals. (Dkt. #1-1, pp. 7-8). The Sixth Amendment guarantee of a criminal defendant's right to confront witnesses against him includes the right to cross-examination, but this right is subject to the wide latitude of trial judges to impose reasonable limits. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974) (stating that the right

to cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause does not guarantee defendants an unlimited right to cross-examination. *Van Arsdall*, 475 U.S. at 678. Generally, Texas law prohibits cross-examination of a witness regarding specific instances of conduct, other than conviction of crime, for the purpose of attacking his or her credibility. Tex. R. Evid. 608(b). In addition, there is no right under the Confrontation Clause to "impeach the general credibility of a witness with evidence of prior bad acts." *Cloud v. Thomas*, 672 F.2d 743 (5th Cir.1980); *see also United States v. Rocha*, 916 F.2d 219, 242 (5th Cir. 1990); *Decluitt v. Dir., TDCJ-CID*, No. 1:04CV589, 2012 WL 1669834, at *10 (E.D. Tex. Mar. 8, 2012), *report and recommendation adopted*, No. 1:04-CV-589, 2012 WL 1670222 (E.D. Tex. May 11, 2012). This includes evidence of the complainant's prior allegations of abuse against a person other than the defendant in a case involving a sexual offense. *See Lopez v. State*, 18 S.W.3d 220, 223 (Tex. Crim. App. 2000). "If, however, the prior allegations are shown to be false, and other facts in the case favor admissibility, the Confrontation Clause may trump state law and mandate admissibility of evidence that a victim has previously falsely accused another." *Coe v. Cockrell*, No. 4:02-CV-826-A, 2003 WL 22053500, at *5 (N.D. Tex. Jan. 16, 2003) (citing *Lopez*, 18 S.W.3d at 225-26).

The facts in this case do not implicate a Confrontation Clause claim. As noted by the state habeas court, any allegations by B.W. of prior sexual abuse by other individuals were not shown to be false. Furthermore, the evidence did not relate to the charges against Petitioner in this case. Thus, any evidence of previous abuse accusations would have had very little, if any, probative value in impeaching B.W.'s credibility. *See id.* Accordingly, any objection on the basis of the

Confrontation Clause would have been without merit. Trial counsel does not render ineffective assistance for failing to raise a meritless argument or objection. *See Clark*, 19 F.3d at 966.

Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's application of *Strickland* was unreasonable or that its findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on this ineffective assistance of trial counsel claim. Thus, this ineffective assistance claim should be denied.

### 3.  Failure to Investigate and Object to Constructive Amendment of the Indictment (Claim 1(c))

Petitioner also asserts that trial counsel rendered ineffective assistance by failing to discover, and object to, the trial court's constructive amendment of the indictment. (Dkt. #1, p. 7; Dkt. #1-1, pp. 6-7). Petitioner states that the offense date range in the jury charge was larger than the date range alleged in the indictment, thus, constructively amending the indictment. (Dkt. #1, p. 7; Dkt. #1-1, pp. 6-7).

Count II of the indictment alleged:

And the Grand Jurors aforesaid, duly selected, impaneled, sworn and charged at said term of said court as aforesaid, upon their oaths further present in and to said court that DAVID WILBANKS, during a period that was 30 days or more in duration, to-wit: from on or about the ***1st day of January, 2008, through on or about the 1st day of August, 2014***, and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there commit two or more acts of sexual abuse, namely, Indecency with a Child and/or Aggravated Sexual Assault against [B.W.], to-wit: with the intent to arouse or gratify the sexual desire of the said defendant, engage in sexual contact with [B.W.] by touching the genitals of [B.W.], and/or by intentionally or knowingly causing the sexual organ of [B.W.] to contact the sexual organ of David Wilbanks, and/or intentionally or knowingly causing the penetration of the sexual organ of [B.W.] by the defendant's finger and at the time of the commission of each of those acts, the defendant was at

16

least 17 years of age and [B.W.] was a child younger than 14 years of age, and not the spouse of the defendant[.]

(Dkt. #13-15, p. 22) (emphasis added).

The trial court instructed the jurors in its charge as to Count II as follows:

Now if you find from the evidence beyond a reasonable doubt that during a period that was 30 days or more in duration, to-wit: from on or about the *1st day of January, 2008 through on or about the 1st day of August, 2014*, in Denton County, Texas, the defendant, DAVID WILBANKS, did then and there commit two or more acts of sexual abuse, namely, Indecency with a Child and/or Aggravated Sexual Assault against [B.W.], to-wit: with the intent to arouse or gratify the sexual desire of the said defendant, engage in sexual contact with [B.W.] by touching the genitals of [B.W.], and/or by intentionally or knowingly causing the sexual organ of [B.W.] to contact the sexual organ of David Wilbanks, and/or intentionally or knowingly causing the penetration of the sexual organ of [B.W.] by the defendant's finger and at the time of the commission of each of those acts, the defendant was at least 17 years of age and [B.W.] was a child younger than 14 years of age, and not the spouse of the defendant, then you will find the defendant guilty of Continuous Sexual Abuse of a Young Child, as charged in Count II of the indictment.

As to Count II, the members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must unanimously agree that the defendant, during a period that is 30 days or more in duration, committed two or more acts of sexual abuse.

As to Count II, all acts of sexual abuse, if any, that form the basis of the offense of Continuous Sexual Abuse of a Young Child, must have occurred on or after *September 1, 2007, and before May 27, 2016*, the presentment date of the indictment.

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant.

(Dkt. #13-15, pp. 43-44) (emphasis added).

Petitioner asserts that the trial court's inclusion of the dates, "September 1, 2007, and before May 27, 2016," in its charge to the jury enlarged the offense date range that was alleged in the indictment, and thus constructively amended the indictment. Petitioner urges that trial counsel's failure to discover, and object to, the trial court's constructive amendment constituted

ineffective assistance of counsel. When he raised the claim in his state application for habeas relief, the state habeas court issued the following findings:

> 7. Applicant argues that counsel was deficient by failing to object to the charge "enlarg[ing] the dates alleged in the indictment."
>
> 8. Count II in the charge in this case instructed jurors on a date range of January 1, 2008 through August 1, 2014.
>
> 9. The Count II date range encompassed a time period that was (1) after the statute's effective date of September 1, 2007, (2) before [B.W.] turned fourteen (later in 2014), and (3) before the 2015 indictment.[6]

(Dkt. #13-28, pp. 54-55). The state habeas court issued the following conclusions of law:

> 2. The Count II offense-date range in the jury charge instructed the jury on a lawful time period. Penal Code Section 21.02 does not present any due-process issues relating to unanimity, and the trial court did not "constructively amend" the indictment; trial counsel therefore was not deficient if he did not raise these issues. *See, e.g., Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008); *Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd).
>
> . . . .
>
> 11. For each of his allegations of ineffective assistance of counsel, Applicant has failed to prove both deficient performance and prejudice resulting from any alleged deficiency. *See Strickland*, 466 U.S. at 700.

(Dkt. #13-28, pp. 61, 64). These findings and conclusions were adopted by the TCCA when it denied the application on the findings of the trial court, which constitutes and adjudication on the merits.

Under the circumstances presented in this case, the State had to prove that the continuous sexual abuse offense alleged in Count II was committed between September 1, 2007, and August 30, 2014, the day before B.W.'s fourteenth birthday. Section 21.02, defining the offense of continuous sexual abuse of a young child, became effective September 1, 2007, and it does not

---

[6] The original indictment was filed in 2015 (Dkt. #13-15, pp. 6-7), and a second indictment was filed on May 27, 2016 (Dkt. #13-15, pp. 22-23).

apply to an offense committed before that date. Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148. Further, section 21.02 applies only to the continuous sexual abuse of a child younger than fourteen. Penal Code § 21.02(b)(2). Thus, in order to lawfully convict Petitioner of continuous sexual abuse of a young child, the State had to prove that the period of abuse occurred between September 1, 2007, when the statute became effective, and August 30, 2014, the day before B.W.'s fourteenth birthday. The indictment and the court's charge reflected this limitation, alleging that the period of abuse occurred between January 1, 2008, and August 1, 2014. The language in the court's charge, "As to Count II, all acts of sexual abuse, if any, that form the basis of the offense of Continuous Sexual Abuse of a Young Child, must have occurred on or after September 1, 2007, and before May 27, 2016, the presentment date of the [second] indictment," did not constructively amend the offense date range in the indictment. The court's charge clearly states that the period of abuse that formed the basis of the offense occurred between January 1, 2008, and August 1, 2014. The court's charge further provided that this specific period of abuse must have occurred "on or after September 1, 2007, and before May 27, 2016." The period between January 1, 2008, and August 1, 2014, is within the period between September 1, 2007, and before May 27, 2016. Contrary to Petitioner's suggestion, the court's jury charge did not expand the offense date range to May 27, 2016.

Because the trial court's charge to the jury did not amend the indictment, trial counsel's failure to allegedly investigate or raise the issue does not constitute ineffective assistance. Petitioner fails to show what further investigation of this issue would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson*, 18 F.3d at 1221. Furthermore, any objection to the jury charge on the basis of impermissible amendment of the indictment would have been without merit. *See Clark*, 19 F.3d at

966 (failure to raise a meritless objection "is not ineffective lawyering; it is the very opposite"). Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court's application of *Strickland* was unreasonable or that its findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on this ineffective assistance of trial counsel claim. Accordingly, this claim should be denied.

**B.      Trial Judge's Bias (Claim 2)**

In Claim 2, Petitioner contends that he was denied his constitutional right to a fair trial by an impartial judge. (Dkt. #1, p. 7; Dkt. #1-1, pp. 12-15).

Petitioner's assertion of judicial basis is based primarily on his allegation that the trial judge did not allow the forensic interviewer witness to testify regarding allegations of sexual abuse that B.W. made against other individuals. (Dkt. #1, p. 7; Dkt. #1-1, pp. 12-15). Additionally, Petitioner suggests that the order transferring his case to the trial judge's court and the trial judge's instruction on reasonable doubt indicates judicial bias. (Dkt. #1-1, pp. 12-15).

Petitioner did not raise a judicial bias claim on direct appeal. When he raised the claim in his state application for habeas relief, the state habeas court issued the following findings:

37. Applicant alleges in ground two that he was denied the right to an impartial judge.

38. Ground two is based entirely upon the trial record.

39. He argues that the trial court's pattern of ruling against him demonstrated a bias.

40. He points particularly to the trial court keeping out evidence that B.W. made accusations of impropriety against other individuals.

41. While Applicant repeatedly alleges that these were "false accusations," he fails to provide any evidence that they were false.

42. When counsel raised the admissibility of these other incidents with the court, the court listened to arguments from each side, gave ample opportunity to defense counsel to explain her position, and then the court made its ruling.

(Dkt. #13-28, pp. 59-60). The state habeas court concluded that:

12. Applicant has failed to show that the trial court erred by excluding evidence that B.W. accused other individuals of impropriety, *see, e.g.*, *Puderbaugh v. State*, 31 S.W.3d 683, 687 (Tex. App.—Beaumont 2000, pet. ref'd), and he has failed to overcome the presumption that the trial court was neutral, detached, and unbiased. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

13. Alternatively, ground two is a claim based entirely upon the trial record, and it therefore should have been raised on direct appeal. *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) (op. on reh'g).

(Dkt. #13-28, pp. 64-65). The TCCA denied relief based on the findings of the trial court.

If the state court based its decision on the alternative grounds of procedural default and a rejection of the merits of a claim, the general rule in the Fifth Circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default. *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005); *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004); *see also Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (if a state court explicitly invokes a procedural bar and alternatively reaches the merits of a petitioner's claims, a federal court is still bound by the state procedural default).

In this case, the state court reached the merits of Petitioner's claim and alternatively invoked a state procedural bar. The applicable state procedural rule was established by *Ex parte Gardner*, which held that record-based claims that are not raised on direct appeal will not be considered in habeas proceedings. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), *on reh'g* (Feb. 4, 1998). The *Gardner* procedural bar was firmly established and regularly followed before the time of Petitioner's trial. *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004).

Therefore, Petitioner's judicial bias claim is arguably barred from federal habeas corpus review unless he demonstrates cause and prejudice or a miscarriage of justice. *Coleman*, 501 U.S. at 750. Nonetheless, the Court has determined to proceed to the merits of Petitioner's judicial bias claim as it finds it clear that Petitioner cannot prevail.

"Stated succinctly, the cornerstone of the American judicial system is the right to a fair and impartial process." *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997)). Therefore, any judicial officer incapable of presiding in such a manner violates the due process rights of the party who suffers the resulting effects of that judicial officer's bias. *Id.* "[T]he Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, [however,] not a uniform standard." *Bracy*, 520 U.S. at 904. This floor "clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* at 905 (citation omitted).

However, "bias by an adjudicator is not lightly established." *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997)). Courts ordinarily "presume that public officials have properly discharged their official duties." *Bracy*, 520 U.S. at 909 (internal quotation marks and citations omitted). General allegations of bias or prejudice are insufficient to establish a constitutional violation. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986) (holding that general allegations of a judge's frustration with insurance companies are not sufficient to force recusal under the Due Process Clause from a case in which an insurance company was a party); *Richardson*, 537 F.3d at 474. The Supreme Court has stated that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Lavoie*, 475 U.S. at 820 (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 702

(1948)). "So even if a judge is disqualified under state or federal law, the disqualification is not always required by the Due Process Clause." *Richardson*, 537 F.3d at 474-75 (citation omitted).

In general, the Supreme Court has recognized "presumptive bias" as the one type of judicial bias other than actual bias that requires recusal under the Due Process Clause. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). Presumptive bias occurs when a judge may not actually be biased but has the appearance of bias such that "the probability of actual bias . . . is too high to be constitutionally tolerable." *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The United States Supreme Court has consistently enforced the basic right to due process and found that decision makers are constitutionally unacceptable when: (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and complaints. *Bigby*, 402 F.3d at 558-59.

Petitioner has failed to show that a genuine question exists as to the trial judge's impartiality. First, Petitioner has not shown that, when ruling on the admission of B.W.'s accusations of improprieties by other individuals, the trial judge was "acting clearly outside the bounds of law or reason in a manner that would signal any bias toward the defendant" or in favor of the State. *Bigby*, 402 F.3d at 563. Indeed, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). As the state habeas court found, Petitioner did not provide any evidence that the accusations were false and when counsel raised the admissibility of these other incidents with the court, the judge "listened to arguments from each side, gave ample opportunity to defense counsel to explain her position," and then made her ruling.

(Dkt. #13-28, pp. 59-60, ¶¶41-42). Petitioner fails to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Thus, Petitioner has failed to show the trial judge's evidentiary ruling signaled judicial bias.

Second, the fact that Petitioner's case was transferred to the trial judge's court does not demonstrate that the trial judge was biased. As the state habeas court found, Petitioner's "case was transferred pursuant to an ordinary transfer order that included four other cases that had been filed around the same time." (Dkt. #13-28, p. 59, ¶ 34). Petitioner fails to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Reassignment of criminal cases within a district court occurs regularly, for numerous reasons related to administrative convenience or necessity, and a litigant has no vested right to a particular judge. There is no basis to construe the state court order that transferred Petitioner's criminal case to the trial judge's court as constituting evidence of bias.

Third, the jury instruction regarding reasonable doubt does not signify any bias against Petitioner or in favor of the State. As noted by the state habeas court, "[t]he only elaboration on 'reasonable doubt' in the charge was the statement that it 'is not required that the prosecution proves guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." (Dkt. #13-28, p. 54, ¶ 6). Texas courts have approved this definition of reasonable doubt in the jury charge multiple times. *See, e.g.*, *Dickerson v. State*, No. 05-20-00339-CR, 2021 WL 5410523, at *1 (Tex. App. Nov. 19, 2021); *Jackson v. State*, No. 05-19-01043-CR, 2021 WL 791095, at *4 (Tex. App. Mar. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *O'Canas v. State*, 140 S.W.3d 695, 701-02 (Tex. App. 2003, pet. ref'd); *Chapin v. State*, No. 05-15-01009-CR, 2016 WL 4421570, at *6 (Tex. App. Aug. 19, 2016, no pet.) (mem. op., not designated for publication); *Borens v. State*, No. 05-07-01516-

CR, 2009 WL 998678, at *5 (Tex. App. Apr. 15, 2009, no pet.) (mem. op., not designated for publication); *Bates v. State*, 164 S.W.3d 928, 931 (Tex. App. 2005, no pet.). Accordingly, the use of an instruction that is commonly used and approved by Texas courts does not indicate judicial bias against Petitioner or in favor of the State.

Finally, Petitioner has failed to show either that the state court adjudication of Petitioner's judicial bias claim on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, the Court finds that Petitioner's Claim 2 either is procedurally barred or should be denied on the merits.

## C. <u>Constructive Amendment of the Indictment (Claim 3)</u>

In Claim 3, Petitioner asserts that the trial court erred by constructively amending the indictment by including a larger offense date range in the court's charge than was in the indictment.

Petitioner did not raise this issue on direct appeal. When he raised the claim in his state application for habeas relief, the state habeas court found that it was "based entirely upon the trial record" (Dkt. #13-28, p. 60, ¶¶ 45-46, p. 65, ¶ 14) and thus "should have been raised on direct appeal." (Dkt. #13-28, p. 65, ¶ 14) (citing *Ex parte Gardner*, 959 S.W.2d at 199). This finding was adopted by the TCCA when it denied the application on the findings of the trial court.

As explained above, federal habeas review of a claim is procedurally barred if the last state court to consider the claim rejected it based on an adequate and independent state procedural ground. *Coleman*, 501 U.S. at 729; *Brewer v. Quarterman*, 466 F.3d 344, 346 (5th Cir. 2006), *adhered to on denial of reh'g*, 475 F.3d 253 (5th Cir. 2006). Because the last state court to consider

the claim found that Petitioner had defaulted it based on a firmly established and regularly followed state bar, Petitioner is procedurally barred from raising the claim in a federal habeas proceeding. Petitioner fails to overcome the procedural bar by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the Court's refusal to consider the claim. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

In his reply, Petitioner contends that he can overcome the procedural bar due to the ineffectiveness of his appellate counsel to raise the issue on direct appeal. (Dkt. #16, pp. 3-4). In certain circumstances counsel's ineffectiveness in failing to properly preserve a claim for review in state court will suffice to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). However, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Id.* at 451-52; *Murray*, 477 U.S. at 489. Petitioner did not raise an ineffective assistance claim against appellate counsel in state court. Thus, to the extent Petitioner contends appellate counsel was ineffective by not raising such claim on direct appeal, the claim is unexhausted, and, under the Texas abuse-of-the-writ doctrine, he cannot return to state court for purposes of exhausting the claim. Tex. Code Crim. Proc. Ann. art. 11.07, § 4. Thus, the claim is procedurally defaulted. A procedurally defaulted ineffective-assistance claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the cause-and-prejudice standard with respect to the ineffective-assistance claim itself. Petitioner offers no explanation for not raising an ineffective assistance claim against appellate counsel in his state habeas application. Thus, his ineffective assistance claim against appellate counsel cannot serve as cause to excuse the

procedural default of another habeas claim. *See LeMasurier v. Dretke*, No. 4:05-CV-472-Y, 2006 WL 929273, at *6 (N.D. Tex. Apr. 10, 2006).

In his reply, Petitioner also cites to *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez*, together with *Trevino v. Thaler*, 569 U.S. 413 (2013), established that a procedural default does not bar federal habeas review of a substantial claim of ineffective assistance at trial if counsel in the initial-review collateral proceeding was ineffective. In *Martinez*, the Supreme Court held that where state law provides that "claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17; *see also Trevino*, 569 U.S. at 428 (recognizing that the "narrow exception" created by *Martinez* applies in Texas, where claims of ineffective assistance of trial counsel are precluded from direct appeal "as a matter of course"). The *Martinez* exception only applies to "substantial" claims of ineffective assistance of trial counsel, "which is to say that the prisoner must demonstrate that the claim has some merit." 566 U.S. at 14, 16; *see also Renteria v. Davis*, No. EP-15-CV-62-FM, 2019 WL 611439, at *78 (W.D. Tex. Feb. 12, 2019); *Acker v. TDCJ-CID*, No. 4:06-CV-469, 2016 WL 3268328, at *27 (E.D. Tex. June 14, 2016); *Battaglia v. Stephens*, No. 3:09-CV-1904-B, 2013 WL 5570216, at *7 (N.D. Tex. Oct. 9, 2013); *Wessinger v. Cain*, No. CIV.A. 04-637-JJB, 2012 WL 1752683, at *3 (M.D. La. May 16, 2012). In this case, however, the procedural default is not barring a claim of ineffective assistance of trial counsel, but one challenging the jury charge as constructively amending the indictment. Thus, Petitioner's reliance on *Martinez* and *Trevino* is misplaced.

Furthermore, even if Petitioner could establish cause for the procedural default, Petitioner fails to demonstrate prejudice from the Court's refusal to consider the claim. Indeed, the Court addressed and rejected Petitioner's argument that the jury charge constructively amended the indictment in the context of Petitioner's ineffective assistance of counsel claim in Claim 1(c). The Court's conclusion in Claim 1(c) disposes of Petitioner's argument in Claim 3 on the merits. Accordingly, the Court finds that Petitioner's Claim 3 either is procedurally barred or should be denied on the merits.

**D.**    **Due Process Violation (Claim 4)**

In Claim 4, Petitioner argues that Texas defendants are victims of Texas's criminal laws regarding sexual assault against children because the laws guarantee convictions and do not allow defendants to defend themselves by allowing charges to be brought many years after the offense in violation of due process rights. (Dkt. #1, p. 8; Dkt. #1-1, pp. 19-22). The Director asserts that Petitioner did not exhaust this claim and that the claim is procedurally barred.

A prisoner must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist that render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. §§ 2254(b), (c). To exhaust properly, Petitioner must "fairly present" all his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This means that a petitioner must have informed the state court system of the same facts and legal theories upon which he bases his assertions in his federal habeas petition. *Id.* at 276-77; *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (internal quotation marks and citations omitted). In Texas, all claims must be presented to and ruled on by the TCCA. *Richardson v. Procunier*, 762 F.2d 429,

430-31 (5th Cir. 1985); *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993). A Texas criminal defendant may exhaust remedies in two ways. A petitioner may file a direct appeal from a judgment of conviction followed, if necessary, by a petition for discretionary review in the TCCA. *See Hall v. Dir.*, TDCJ-CID, No. 4:18CV721, 2021 WL 5926017, at *2 (E.D. Tex. June 23, 2021), *report and recommendation adopted*, No. 4:18CV721, 2021 WL 5919029 (E.D. Tex. Dec. 15, 2021); *Mitchell v. Lumpkin*, No. CV H-20-3619, 2020 WL 6504624, at *2 (S.D. Tex. Nov. 5, 2020). Alternatively, a petitioner may file an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the TCCA once the trial court determines whether findings are necessary. *See* Tex. Code Crim. Proc. art. 11.07 § 3(c). "Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." *Busby*, 359 F.3d at 723.

A review of Petitioner's state proceedings reveals that the Director is correct that Petitioner did not fairly and properly present Claim 4 to the highest state court. Petitioner failed to raise this claim either on direct appeal and his PDR or in his state habeas application. (*See* Dkt. ##13-7, 13-11, 13-25, 13-26; *see also* Dkt. #1, p. 10, ¶ 23 (stating that he raised Claim 4 for the first time in his habeas petition)). Therefore, the TCCA has not had an opportunity to review Petitioner's claim. Accordingly, Petitioner's Claim 4 is unexhausted.

If a petitioner has failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas review. *Coleman*, 501 U.S. at 735, n.1; *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). If Petitioner presented Claim 4 at this time to the TCCA in another state writ

application, the court would find it to be procedurally barred under the Texas abuse of the writ doctrine. Tex. Code Crim. Proc. Ann. art. 11.07 § 4; *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). Thus, upon return to federal court, this claim would be barred from federal habeas review under the federal procedural default doctrine. *See Fearance*, 56 F.3d at 642 (the Texas abuse of the writ doctrine is an "independent and adequate" state procedural bar for purposes of federal habeas review); *see also Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review.") (quoting *Coleman v. Quaterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007))).

In his petition, Petitioner explains that he did not present his claim in state court because he "just received [his] trial transcripts," this is "the first time anyone has attempted to raise this ground in any petition," and he is not an attorney. (Dkt. #1, p. 10). None of these reasons establishes cause to excuse the procedural default. *See, e.g.*, *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992) (neither *pro se* status nor ignorance of the law is sufficient cause to excuse a procedural default).

In his reply, Petitioner contends that he can overcome the procedural bar due to the ineffectiveness of his appellate counsel to raise the issue on direct appeal. (Dkt. #16, p. 4). He also cites to *Martinez* and *Trevino*. (Dkt. #16, p. 4). As explained above, however, his ineffective assistance claim against appellate counsel cannot serve as cause to excuse the procedural default of another habeas claim. *See Edwards*, 529 U.S. at 451-52; *Murray*, 477 U.S. at 489; *LeMasurier*, No. 4:05-CV-472-Y, 2006 WL 929273, at *6. Furthermore —as noted above—the exception to procedural default recognized in *Martinez* and *Trevino* applies only to defaulted ineffective assistance of trial counsel claims. *Martinez*, 566 U.S. at 14, 16; *see also Renteria*, No. EP-15-CV-

62-FM, 2019 WL 611439, at *78; *Acker*, No. 4:06-CV-469, 2016 WL 3268328, at *27; *Battaglia*, No. 3:09-CV-1904-B, 2013 WL 5570216, at *7; *Wessinger*, No. CIV.A. 04-637-JJB, 2012 WL 1752683, at *3. Claim 4 is not a claim of ineffective assistance of trial counsel; thus, the *Martinez* and *Trevino* exception does not apply. Finally, Petitioner has failed to show that he is actually innocent of the crimes for which he was convicted.

Because Petitioner fails to overcome the procedural bar by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the Court's refusal to consider the claim, *see Murray*, 477 U.S. at 488; *Finley*, 243 F.3d at 220; *Fearance*, 56 F.3d at 642, Petitioner's Claim 4 should be dismissed.

## V. CONCLUSION

Claim 1 is without merit. Specifically, Petitioner fails to show that trial counsel rendered ineffective assistance under *Strickland*. Claim 2 and 3 either are barred from federal habeas corpus review and should be dismissed or are without merit and should be denied. Claim 4 is unexhausted and procedurally barred from federal habeas corpus review; thus, it should be dismissed. Additionally, Petitioner fails to rebut the presumption of correctness to which the state findings are entitled and show that there was no reasonable basis for the state court to deny relief. *Valdez*, 274 F.3d at 947; *Richter*, 526 U.S. at 98. Finally, Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Richter*, 562 U.S. at 97-98; *Williams*, 529 U.S. at 402-03 *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of November, 2022.**

33

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE